J. T. SHULL v. THE BOARD OF COMMISSIONERS OF GRAY COUNTY *et al.*

54  101
61  802

54  101
f79  92
f79  211

1. COUNTY CANVASSING BOARD — *Action by Candidate.* A candidate for election to a county office who upon the face of the returns is elected may maintain an action in his own name to compel the county canvassing board which rejects a portion of the returns to reconvene and canvass the full returns of the election; and this may be done-although the county attorney may have already brought an action in the name of the state for substantially the same purpose.

2. RETURNS — *Showing Insufficient to Impeach.* In this proceeding it appears that returns were rejected by the canvassing board because of alleged fraud in the count and return of the votes cast. *Held,* That the showing made to the board was insufficient to impeach the returns, and that it was the duty of the board to canvass the full returns, and declare the result shown by them.

*Original Proceeding in Mandamus.*

ACTION by *J. T. Shull* against the *Board of Commissioners* of Gray county and others, for a writ of *mandamus* to compel defendants to reconvene as a board of canvassers and canvass the full returns as made of the votes cast for plaintiff as a candidate for treasurer of such county at the general election in 1893. The opinion herein was filed October 6, 1894.

*H. F. Mason,* for plaintiff:

Under the familiar principle that the duties of a canvassing board are ministerial only, plaintiff regards his right to a peremptory writ as clear. The case of *Lewis v. Comm'rs of Marshall Co.,* 16 Kas. 102, 108, being clearly in point, and unmodified by subsequent decisions, makes any further citation of authorities superfluous.

An examination of the testimony in detail bears out plaintiff's claim that the defense is inspired by deliberate intention to defraud, and not by a mere mistake of either law or fact. It is clear that there was no opportunity for any fraud in making up the returns. Nor is any charged.

Under the pleadings and testimony, plaintiff contends that there is no occasion for receiving the ballots in evidence. There is no testimony tending to impeach the genuineness of the tally sheets. It is clear that the defendants have refused to perform their plain statutory duty without reason and without even a plausible excuse. Should this court, however, regard it as necessary or advisable to open and examine the ballots, plaintiff urgently submits that such examination should be made with the greatest possible precautions, so as to detect any tampering if it exists; that plaintiff and defendants should both be represented at the time; that the unused ballots should be produced; that the same proof be made that these returns are genuine and unaltered as has been adduced in support of the tally sheets, and that, if any discrepancy exists, the testimony of the election officers be taken regarding

it. Should the ballots not accord with the other returns, plaintiff is confident that a careful examination will show that they have been altered.

It was manifest and uncontradicted that the returns as made to the board of canvassers were genuine and unaltered. The duty of the defendants was and is clear and unequivocal — to announce the result as found, and leave the errors, if any, to be corrected by due course of law.

*Sutton & McGarry*, for defendants:

The board of canvassers of Gray county should not be compelled to reconvene and canvass the election returns from Logan precinct in said county, so far as the same relate to the office of county treasurer, for the returns, so far as they relate to that office, are so tainted with fraud that the truth cannot be deduced from the returns, and they are manifestly a fraud. They were not genuine returns, were grossly fraudulent, and the board did right, and should have rejected them.

"Returns grossly and manifestly untrue have no force as evidence, and have no value in any proceedings to determine the result in an election." *The State, ex rel., v. Stevens,* 23 Kas. 456.

To compel the canvass of the vote for treasurer, under the evidence, would be compelling the board of canvassers to do a wrong, sanction an outrage, and the court will not do it, in the exercise of judicial discretion. *The State, ex rel., v. Stevens,* 23 Kas. 456.

The plaintiff objects to an examination of the ballots that are before the court for its inspection, if the court concludes to examine them. That the plaintiff makes this objection, and for the further reason that the package containing the ballots was taken by the county clerk, E. G. Barton, and placed in the office of plaintiff's attorney, J. B. Naylor, shortly after the canvass, are the best reasons why the ballots should be inspected. That the court has ample authority under the law so to do, there can be no contention. *The State,*

*ex rel., v. Marston,* 6 Kas. 524; *The State, ex rel., v. Comm'rs of Hamilton Co.,* 35 id. 647; McCr. Elect. 534.

Since the commencement of this action the board has entirely changed by being reorganized; that is, the board of county commissioners and county clerk for the year 1893 is not the board of county commissioners and county clerk for the year 1894, and the fact that the board of county commissioners and county clerk, acting as a board of canvassers for the year 1893, failed to do some act that they ought to have done, or did some act that they ought not to have done, will not bind their successors, the board of county commissioners and county clerk for the year 1894. *Sheldon v. Comm'rs of Butler Co.,* 48 Kas. 356.

Before a peremptory writ of *mandamus* can be issued against the board of county commissioners and county clerk as organized for the year 1894, a demand for a canvass of this vote must have been made upon them and they have refused or neglected to canvass. In *Lewis v. Comm'rs of Marshall Co.,* 16 Kas. 108, Judge BREWER used the following language:

"As a general rule, when a duty at the proper time is asked to be done and improperly refused to be done, the right to compel it to be done is fixed, and is not destroyed by the lapse of the time within which in the first place the duty ought to have been done."

Before *mandamus* would issue against the present board, assuming it to be constituted of persons other than those named as defendants, a demand upon them to perform the duty of canvassing and a neglect or refusal on their part to canvass would be necessary.

*H. F. Mason,* for plaintiff, in reply:

Defendants plead that the tally sheets were altered and showed it on their face, and were not genuine. They also allege that the ballot pouch has been tampered with, the seals having been "broken and replaced." How could a doctored ballot pouch tend to discredit the other returns? But the

practical objection to the opening of the ballots is, that it would be manifestly unfair that they should be admitted in evidence without an opportunity being given plaintiff to show that if there is a discrepancy it is by reason of changes made since the ballots have been in the custody of the county clerk.

Defendants show, by their objections raised in the action brought in the district court, by their answer in this case, by their evidence taken herein, and finally by their formal brief, a settled determination not to canvass the vote if it can be avoided by any device, subterfuge, or technicality. Under such circumstances, the suggestion of a lack of demand is very much like adding insult to injury. *C. K. & W. Rld. Co. v. Comm'rs of Chase Co.*, 49 Kas. 399–414.

The opinion of the court was delivered by

JOHNSTON, J.: At the last general election in Gray county, J. T. Shull, C. S. Warner and A. R. Moebius were candidates and received votes for county treasurer. According to the face of the returns, Shull received 207 votes, Warner 194, and Moebius 24. The county canvassing board, however, rejected the returns from Logan township as to the office of county treasurer, and upon the remaining returns found and declared that Warner was elected. This action is brought by Shull to compel the county commissioners and county clerk to reconvene as a board of canvassers and canvass the full returns as made to them, including those from Logan township relating to the office of county treasurer, and declare that Shull was elected, it being alleged that the election returns show upon their face that plaintiff was elected to that office. The defendants answered that the returns from Logan township were not legal and genuine election returns, and that as presented to the defendants they "bore upon their face the appearance of having been tampered with and altered, in that erasures appeared to have been made upon the tally sheets, and envelopes containing the ballots cast appeared to have had the seals broken and replaced." It was further alleged, that 16 voters of Logan township had made

affidavit that they voted for Warner, while the returns from that township gave him only eight votes. As a further answer, it is alleged that an action of *mandamus* had been begun in the name of the state against these defendants in the district court of Gray county, in which it was sought to compel the canvass of the votes and for the same relief that is asked in this action.

Testimony has been taken upon the charges made, but it fails to convince us that fraud was committed by the election officers of the township, or that the returns were altered or tampered with. It is shown that the count was watched by voters who represented the different political parties, and no one detected any error or wrong in the count. The returns made to the county clerk and to the township trustee showed no trace of any erasure, and while they were out of the hands of the judge who carried them to the county clerk for a few minutes, there is nothing to show that there was any attempt or disposition to tamper with the returns. They appear to have been received by the county clerk in the condition in which they were sealed up, and the evidence introduced is not sufficient to impeach the genuineness of the returns. It is true that 16 men made affidavit before the board of canvassers that they voted for Warner for county treasurer at the election in Logan township. One of them, however, afterward admitted that he was mistaken, and there is that in the testimony of some of the others which weakens their statements, and shows the unreliability of that class of evidence upon which to set aside the returns of an election.

The duty of a canvassing board is almost wholly ministerial. They are to ascertain and declare the result of the voting as shown by the returns. In the first place, they are to determine that the returns are genuine, but when they are satisfied of that "they may not reject any returns because of informalities in them, or because of illegal and fraudulent practices in the election." (*Lewis v. Comm'rs of Marshall Co.*, 16 Kas. 102.) When it appears that returns made to a canvassing board are grossly and manifestly fraudulent, as was the

case in *The State, ex rel., v. Stevens,* 23 Kas. 456, the court, in the exercise of judicial discretion, may refuse to compel a canvass of such returns. In this case, however, we think the testimony fails to impeach the returns, and that the commissioners were not justified in refusing to canvass the returns from Logan township.

The institution of the *mandamus* proceeding in Gray county does not prevent the maintenance of this action by the plaintiff. The former was brought by the county attorney in the name of the state, and the plaintiff in this action has no control over the same. He has an interest in the canvass, and is entitled to maintain an action in his own name to require a canvass of the full returns upon the office for which he was a candidate.

It is said that there has been a change in the board of county commissioners and county clerk since the refusal was made to complete the canvass. It was the duty of the successors to canvass the full returns, and a peremptory writ of *mandamus* will issue to them commanding such a canvass.

As this proceeding was begun before the change in the board was made, the costs will be adjudged against the officers who originally refused to make the canvass. A peremptory writ will issue requiring the county commissioners and county clerk to reconvene as a canvassing board, and canvass the full returns of the election, and to declare the result, in accordance with the prayer in the plaintiff's application.

All the Justices concurring.